ALBANY,
Feb. 1824.

Jackson
v.
Gumaer.

## JACKSON, ex dem. MERRITT and STANTON, against GUMAER.

In certifying the acknowledgment of a mortgage, or deed, &c., under the statute, (1 R. L. 369, s. 1,) it is sufficient for the officer to say "on, &c., before me, A. B. one, &c., came *J. S. to me known*, and acknowledged that he executed the above mortgage (or deed) for the uses and purposes therein mentioned," &c., without saying "to me known to be the person described in and who executed the said mortgage," (or deed.)

That the omission of this clause has been extensively practiced in the state, so that many titles would be disturbed by allowing it to affect the certificate, would

EJECTMENT, to recover 20 acres of land on lot No. 93, in the town of Manlius, and county of Onondaga, tried at the Onondaga Circuit, in June, 1822, before his honor (the late) Chief Justice SPENCER. The plaintiff's declaration contained two demises—one from Samuel Merritt, on the 29th day of February, 1816, and the other from Benjamin Stanton, on the 1st day of January, 1822.

The counsel for the plaintiff introduced as evidence, 1st, a deed from Samuel Merritt to De Witt Rose, for 100 acres of land, including the premises in question, dated February 29, 1816, duly acknowledged and recorded in the Clerk's office of the county of Onondaga : 2dly, a mortgage from De Witt Rose to the people of the state of New York, dated February 29th, 1816, for the aforesaid 100 acres, with an acknowledgment annexed in these words : "Onondaga county, ss. On the second day of March, 1816, before me, Jacob R. De Witt, one of the Judges of the Court of Common Pleas in and for the county of Onondaga, came De Witt Rose, to me known, and acknowledged that he executed the above deed of mortgage, for the uses and purposes therein mentioned. I having examined the same, do allow it to be registered and recorded. Jacob R. De Witt." The counsel for the defendant objected to the mortgage as evidence, on the ground that the certificate of acknowledgment did not state that the officer was acquainted with the person making the acknowledgment, and that he knew him to be the person described

perhaps amount to a construction of the act, and at all events would render the court unwilling to listen to an objection for this cause.

Form of such a certificate.

An affidavit of sale under the 8th section of the *act concerning mortgages*, (1 R. L. 374,) is sufficient if certified in this form : "Sworn before me this 1st day of November, 1821, Geo. Dexter, comsr." &c., without expressly certifying that the deponent appeared before him, &c.

The deed to or from a lunatic, before office found, is not void but voidable only ; and, therefore, one who is not in privity with the lunatic cannot object his insanity.

The objection that a conveyance of land is void, because the grantor is out of possession, does not apply to a patent or deed of land from the people of the state.

in, and who executed it. The objection was overruled; and the mortgage admitted as evidence.

The counsel for the plaintiff next offered in evidence exemplifications of the record of affidavits of the due publication and posting of a notice of sale of the premises mentioned in the mortgage, and of the sale of the premises and the purchase thereof by the Attorney General, the last of which was objected to by the defendant's counsel, on the ground that the certificate of the officer before whom the affidavit was taken, was defective ; that it did not comply with the requisites of the statute. It was in these words : " Sworn before me this 1st day of November, 1821. Geo. Dexter, comsr. &c." This objection was also overruled, and the affidavit admitted as evidence.

The counsel for the plaintiff next offered a deed of release for the 100 acres, from the Attorney General to *the people of the state of New York*, and a patent from *the people of the state of New York to Benjamin Stanton* for the same 100 acres, including the premises in question, dated November 9th, 1821.

The defendant claimed title to the premises under a deed from the Sheriff of the county of Onondaga to him, for all the right and title of Samuel Merritt to the lot No. 93. The Sheriff's sale was made under a judgment in the Supreme Court, docketed in August term, 1816. The judgment and execution, which were referred to and recited in the deed from the Sheriff to the defendant, (being in a cause entitled *Jacob Hadley* v. *Samuel Merritt*,) were admitted by the plaintiff.

The defendant's counsel then offered to prove that the defendant was in possession and claimed title to the premises under the judgment against Merritt, and his deed from the Sheriff at and before the time when the patent was granted by the people of the state of New York to Benjamin Stanton, for the purpose of showing that the patent was void on the ground of adverse possession, which testimony was objected to by the plaintiff's counsel and rejected by the Court.

The defendant's counsel then offered to prove that De Witt Rose was insane at the time the deed from Samuel

ALBANY,
Feb. 1824.

Jackson
v.
Gumaer.

Merritt to him and the mortgage from Rose to the people were executed, which testimony was objected to by the plaintiff's counsel and rejected by the Court.

The defendant's counsel then offered to prove that a commission of lunacy issued from the Court of Chancery of the state of New York, upon an inquisition taken the 17th day of November, 1818, finding that De Witt Rose had been a lunatic for two years and upwards. This testimony was also objected to by the plaintiff's counsel and rejected by the Court, on the ground that the defendant could not call in question the sanity of De Witt Rose. It was proved by Thomas Rose that Samuel Merritt was in possession of the premises at the time he executed the said deed to De Witt Rose. The cause was then submitted to the jury who found a verdict for the plaintiff.

*H. B. Davis*, for the defendant, now moved for a new trial, on the following grounds :

1. That the evidence of De Witt Rose's lunacy was improperly rejected.

2. That the affidavit to prove the regularity of the proceedings, under the statute, upon the mortgage, was not made before the proper officer.

3. The proof offered that the defendant was in possession of the land, claiming adversely, at the time of issuing the patent to Stanton, ought to have been received.

4. The certificate of acknowledgment did not comply with the requisitions of the act.

He said the first point depended upon the question whether the mortgage was void or voidable. The objection to the evidence of lunacy, was the old one contained in *Beverly's case.(a)* The only reasons given in that case are, that a man shall not be received by the law to stultify himself, and disable his own person; and also, because when a man recovers his memory, he cannot know what he did when he was *non compos mentis.* These are the only arguments there used, and it will be seen that modern authorities have widely deviated from them.(*b*) The objection of the old law was *ad personam.* It held that the deed was void, but

(*a*) 4 Rep. 123.
(*b*) 2 Bl. Com. 291, 2. Co. Litt. 2, *b.* and Harg. note 11. Id. 247, a. b. and Harg. note 186. *Thompson* v. *Leach,* 2 Ventr. 198, 208. *Webster* v. *Woodford,* 3 Day's Cas. 90. *Rice* v. *Peet,* 15 John. 503. 1 Chit. Pl. 470, and the cases there cited.

could not be avoided by the party, though it might be by privies.(c)   But this is not the true distinction.  It depends on the question whether the deed be void or voidable, as in case of infancy.   Such was holden to be the point of inquiry in *Zouch* v. *Parsons*,(d) where a third person sought to avoid the deed of an infant.   Now the deed of one *non compos mentis* is void ;(e) and may be treated as a nullity by all persons who might otherwise be affected by it.   A committee may regard his acts as void, from the time he is found under the commission to have become lunatic.( f )

2. The commissioner who takes the affidavit of the sale, is expressly required, by the statute,(g) " to subscribe his name to a certificate underneath the same, purporting that the person making the affidavit, had appeared before him and made oath to the same."   There is a difference between the language of the certificate as required by the statute, and the common *jurat* to an affidavit.   Besides, it does not appear that it was sworn before the proper officer.   The words " Comsr. &c." do not describe an officer qualified to take affidavits.

3. Evidence of adverse possession was admissible in avoidance of the patent.   Neither the state, nor an individual, has power to convey land holden adversely by another. This was conceded in *Jackson* v. *Hudson*,(h) where an Indian possession was set up to avoid a patent.   The Court assume, that an adverse possession would have avoided the deed if it had been established, and put the denial of such an effect upon the nature of the possession.(i)   The state stands, as plaintiff, on the same footing with any other individual.   Thus it is enough for the defendant in ejectment, at their suit, to show a title out of the people, though he establish none in himself.( j )   That the people were not in possession at the time of their grant, is a sufficient defence. They had no title except what they claimed under the deed of the lunatic.  This being void, the case was the same as if they had previously conveyed all their title to another ; and had nothing to grant.   The patent would have been void at the common law.   A sale of lands, holden adverse-

ALBANY,
Feb. 1824.

Jackson
v.
Gumaer

(c) *Beverly's case*, 4 Rep. 123.
(d) 3 Burr. 1794, 1804.
(e) *Thompson* v. *Leach*, 2 Ventr. 198, 208.  1 Ld. Raym. 315, S. C. 3 Mod. 301, S. C.
(f) 1 Collinson on Lunacy, 413.  1 Fonbl. 42.
(g) Sess. 36, ch. 32, s. 8, 1 R. L. 374.

(h) 3 John. Rep. 375.

(i) Id. 385.

(j) *The People* v. *Cutting*, 3 John. Rep. 1.

ly, by commissioners appointed by an order of Court, under the act for the partition of lands, has been holden void.(1) The people should prosecute their action of ejectment, and recover possession, before they have power to grant. Let us not be told, that lands cannot be holden adversely to them. The contrary is recognized by the statute of limitations. Forty years possession of their lands is a bar of their action.(k) Nothing is better settled than that to bar a claim of lands under the statute of limitations, there must be an adverse holding; and to say that this cannot be as to the state, is to make the act of limitation a dead letter.

4. The certificate of acknowledgment is not in compliance with the statute,(l) which provides "that no such acknowledgment shall be taken, unless the officer taking the same shall know, or have satisfactory evidence, that the person making such acknowledgment is the person described in, and who has executed such deed, conveyance or writing, and that no such proof shall be taken, unless the officer taking the same shall know the person making such proof, or have satisfactory evidence that he is a subscribing witness to such deed, conveyance or writing, and that such witness knew the person who executed the same, all of which shall be inserted in the said certificate of such acknowledgment or proof." The 8th section(m) provides, that it shall not be lawful for the Secretary of State, or any Clerk of any city or county in this state, to record any deed, conveyance or writing, unless the same shall be acknowledged or proved as directed by this act." This mortgage, then, was improperly recorded. The omission to certify that Rose was known to the acknowledging officer to be the person who executed it, is a fatal defect. The statute is imperative that this shall appear in the certificate, and there is no escape from the plain language of this provision. It is salutary in its object, and should be rigidly enforced. It was aimed at the frauds which may be practiced in personating grantors, to which the old statute regulating these acknowledgments was found inadequate, by experience. This will be seen by comparing the present law with the statute of 1788,(o) which omitted the clause in question. This having resulted in numerous

ALBANY,
Feb. 1824.

Jackson
v.
Gumaer.

(1) 13 John.
488.

(k) 1 R. L.
184, 185, s. 1.

(l) 1 R. L.
369, s. 1.

(m) 1 R. L
371.

(o) 2 Greenleaf, 99, s. 1, 2.

frauds, the Legislature on the 11th February, 1797, interfer- <span>ALBANY,</span>
ed by a supplementary act, requiring that the officer, before <span>Feb. 1824.</span>
he certified the acknowledgment, should know, or have satis- <span>Jackson</span>
factory evidence to identify the party acknowledging, or the <span>v.<br/>Gumaer.</span>
witness making the proof, all of which should be inserted in
the certificate.( *p* )   This has been continued in the revisals <span>( *p* ) 3 Green-</span>
to the present time.(*q*)   The importance of knowledge is <span>leaf, 218.</span>
obvious.   Suppose two men bearing the name of De Witt <span>(*q*) 1 K. &<br/>R. 478.    1 R.</span>
Rose, one having title and being correctly described in the <span>L. 369.</span>
deed, the other not: if it is enough for the officer to say " I
know De Witt Rose," and stop there, it is easy to practice
the grossest imposition, by procuring an acknowledgment
from the latter, and passing the conveyance for the genuine
deed of the one having title.   But this difficulty is obviated
by requiring the officer to certify that the cognizor is the
person described in the conveyance, and that he knows, or
has satisfactory evidence that he is the very person who ex-
ecuted it.   The examination is *ex parte.   Jackson* v. *Shep-*
*ard*,(*r*) will be found a stronger case for the admissibility of <span>(*r*) 2 John.</span>
the deed than the present one.   The Judge there certified <span>Rep. 77</span>
that James Roe was the grantor, yet the deed was holden
to be properly overruled, because it wanted the clause re-
quired in the act of 1797.   Where a deed is proved in open
Court, with every opportunity for cross examination, the
grantor must be identified.   How much more need is there
of strict accuracy in this respect, where the proof is entirely
*ex parte*, and generally passes with the least possible inqui-
ry and observation.   But it is enough that this is matter of
positive regulation.   The statute declares the acknowledg-
ment inoperative.   The deed is like an English lease which
wants a stamp.   The absence of the proper mark renders it
inadmissible.

*Talcott*, (Attorney General,) contra.   The second point
now insisted on was not made at the trial.   The objections
were to the mortgage and affidavit, for the want of form
only.   As to the certificate of acknowledgment, the statute
should receive a reasonable construction.   The officer is
not supposed to see the deed executed, nor can he, in gen-

ALBANY,
Feb. 1824.

Jackson
v.
Gumaer.

(r) Jackson
v. Humphrey,
1 John. Rep.
498.

(s) Jackson
v. Schoonna-
ker, 4 John.
Rep. 161.

(t) M'Fer-
ran v. Powers,
1 Serg. &
Rawle's Rep.
105, 106, per
Tilghman, C.
J. DeLancey's
Lessee v. M'-
Kean, 5
Cranch, 22.

(u) 1 Serg.
& Rawle Rep.
106

(v) 5 Cranch,
29.

eral, do this. How is he to know the precise grantor, and be capable of certifying his identity, without any qualification, unless he sees the execution ? The acknowledgment is the only evidence. The necessity of identification is imposed by the statute, not where the party himself acknowledges, but where the proof of the execution is made out by witnesses. The certificate is not conclusive.(r) Though it state the knowledge of the officer, this may be done away by adverse proof.(s)

The form of this certificate has been sanctioned by a most extensive and continual usage from the passage of the act to the present day, of which the Court will take notice.(t) If it is now to be condemned, hardly a title in the various recording counties of the state will be secure. In M'Ferran v. Powers,(u) it is said that the manner of taking the acknowldgment in question, had become " so extensive and deep rooted in practice, that numerous titles depend on it, and it would be unpardonable to disturb it now, by a critical examination of the words of the act," under which it was taken. In M'Kean v. De Lancey's lessee,(v) the question was as to the form of the exemplification to be used in evidence ; and Lewis, counsel, named 27 cases in which he had been concerned, where exemplifications of the form in question had been used in evidence, and no objection ever taken. Marshall, Ch. J. said the Court would decide, if in doubt upon the law, whether they would hear evidence of the practice ; and in delivering the opinion of the Court, he says, " were this act of 1715 now for the first time to be construed, the opinion of this Court would certainly be, that the deed was not regularly proved ; but in construing the statutes of a state on which land titles depend, infinite mischief would ensue, should this Court observe a different rule from that which has been long established in this state ; and what is decisive with the Court, is, that the Judge who presides in the Circuit Court for the district of Pennsylvania, reports to us, that this construction was universally received. On this evidence, the Court yields the construction which would be put on the words of the act, to that which the Courts of the

state have put upon it, and on which many titles may pro
bably depend."

[Here the Attorney General produced and offered as evi-
dence of the usage under the recording act, a great many
certificates from the Secretary of State, and the Clerks of
different counties, showing that the certificate of acknow-
ledgment in question corresponded with the form in very
extensive use through the state, ever since the act of 1797.]

The words "to me known," (or, "to me well known,")
used in this certificate, are of almost universal prevalence,
without any thing more ; and if this is not right, the statute
has been strangely misconstrued by almost every officer in
the state.   The statute of 1797 grew out of the frauds which
had been perpetrated by personation, relative to the milita-
ry tract ; and that the grantor is known to the acknowledg-
ing officer, is, in all cases, sufficient to avoid this consequence
except perhaps in the single instance of there being two per-
sons bearing the same name, and having the same descrip-
tion, which would be a strange, anomalous circumstance,
not contemplated by the act.   All that can be required is
reasonable certainty, and this is attained by the form in
question.   That he knows the name of the grantor who con-
fesses the execution, is all that can be required, in reason.
The act does not prescribe any particular form, but is open
as to the manner in which the knowledge of the officer is to
be expressed.   His knowing the person, implies every thing
that is necessary.   Some confidence must have been repo-
sed in him by the statute.   The witness must also be known.
This is enough, without knowing him to have subscribed
as a witness.   The entire knowledge of the officer must, in
the nature of things, be derived from the proof.   This shows
how unreasonable it must be to subject his acts to hyper-
critical scrutiny.   The whole act should, if possible, be
made consistent with all its parts.   The words "to me
known," refer to the cognizor as grantor.   The officer says,
"I know him as a grantor, in the deed upon which my cer-
tificate is endorsed."   The language must be referred to the
subject matter of it.   Fraud may possibly happen, but it is
not probable.   It is enough that it generally meets the mis-
chief it was intended to remedy.   This act is highly penal,

ALBANY
Feb. 1824.

Jackson
v.
Gumaer

ALBANY,
Feb. 1824.

Jackson
v.
Gumaer.

(w) 1 R. L.
371, 2, s. 9

giving treble damages to the party grieved, for the omission or fraud of the officer to bestow every necessary scrutiny upon the subject,(w) and if the question be doubtful, the Court should, for this reason, give a benign construction to his acts. Every law officer of the government has sanctioned this form.

2. It is objected that the certificate of the officer taking the affidavit of sale, does not state, in terms, that the deponent appeared before him, &c. But it is enough that the statute is substantially complied with. It appears that the deponent was sworn, and this could not well be unless he appeared before the officer. As to the description of the officer, this Court have repeatedly decided that the words "Commissioner, &c.," are sufficient to an affidavit in support of a motion. The reason in that case applies here. In both instances, it is necessary for the *jurat* to show that the officer has authority to administer an oath, or the deponent cannot be indicted for perjury.

3. As to the proof of insanity in D. Rose, it is conceded that its admissibility depends upon the question whether the mortgage was void or voidable. If the latter, it is enough for our purpose. "A thing may be said to be void in several degrees. 1. Void, so as if never done to all purposes, so as all persons may take advantage thereof. 2. Void to some purposes only. 3. So void by operation of law that he that will have the benefit of it may make it good."(x) Unless this mortgage be void, then, to all intents and purposes, the defendant, who is a stranger, cannot take advantage of Rose's lunacy. It is not enough that it is void to some purposes only. Blackstone(y) says, that "idiots and persons of non-sane memory, infants and persons under duress, are not totally disabled either to convey or purchase, but *sub modo* only. For their conveyances and purchases are voidable, but not actually void." It is said, the distinction in relation to a lunatic grows out of an exploded maxim. Not so. The deed is voidable, because a particular man cannot avoid it. The rule of non-stultification, if it exist, only goes to increase the strength of the position. But we are not driven to contend that the party may not avoid it. Could the king seize the lands of a lunatic on the ground that his grant is

(x) *Keite* v.
*Clopton,* Vin.
Ab. void and
voidable, (A.)
pl. 18.

(y) 2 Bl.
Com. 291.

void, or must be await the execution of a commission or a scire facias ?  Clearly the latter,(a) which of itself, shows that the conveyance is not a nullity. The very cases cited on the other side go to prove the same. It is said by Maddock,(b) that "after an inquisition found, the committee, it seems, may, in a suit by him and the lunatic, avoid his acts from the time he is found to be non compos;" and it would appear to follow that this could not be done before. In Thompson v. Leach,(c) the Court did say that the act of the lunatic was void, because, if only voidable, some act ought to be done to avoid it. They say, however, that the feoffment of a lunatic is only voidable; and they do not pronounce his deed, in any case, void to all intents and purposes; and they agree that the deed of a lunatic and infant are parallel in all respects, except that the former may not stultify himself. In Zouch v. Parsons,(d) the counsel relied on the distinction between those acts of the infant which take effect by livery or otherwise. As to this, Ld. Mansfield said,(e) "We think the law is as laid down by Perkins, (sect. 12,) ' that all such gifts, grants or deeds, made by infants, which do not take effect by delivery of his hand, are void : but all gifts, grants or deeds, made by infants, by matter in deed or in writing, which do take effect by delivery of his hand, are voidable, by himself, by his heirs, and by those who have his estate.' The words, ' which do take effect,' are an essential part of the definition, and exclude letters of attorney, or deeds which delegate a mere power and convey no interest. In Bro. Abr. tit. ' Dum fuit infra ætatem,' pl. 1, (which cites 46 Ed. 3, 34,) it is noted, ' that a Dum fuit infra ætatem was admitted to lie of a rent ; and yet, by some, the grant of an infant was void—not voidable.' But (says the book) ' it is not so, for then this action would not lie, and besides, the delivery of a deed cannot be void, but only voidable.' There is no difference, in this respect, between a feoffment and deeds which convey an interest. The reason is the same." Lord Mansfield applies the same doctrine to a lunatic, and the same result follows. Suppose no bond, but only a mortgage is given for money borrowed of a lunatic, payable ten years hence; could the lunatic

ALBANY, Feb. 1824.

Jackson
v.
Gumaer

(a) Vin. Ab Lunatic, &c (B. 2) (C. 3) (E. 2.) Beverly's case, 4 Rep. 127. Thompson v Leach, Comb 468.
(b) 2 Mad Ch. 592.
(c) 1 Ld. Raym. 315.

(d) 3 Burr 1794.

(e) Id. 1804

mortgagee set it up as void, and sure immediately for the money lent? Certainly not; and, as Ld. Mansfield says in *Zouch* v. *Parsons,* the deed is not void unless both parties can avoid it. If either have a right to enforce, it is voidable merely. Some of the cases which I cite are those of feoffment. But the reason is the same in respect to a bargain and sale, or mortgage. An acknowledgment before an officer is an act as solemn as livery of seisin. An acknowledgment of a fine by a lunatic is not even voidable; and shall an acknowledgment before an officer be holden void? It is plain from Perkins, (sec. 298,) that an exchange by one of non-sane memory is voidable only, and may be made good by the entry of the heir; yet there is no livery upon an exchange.(*f*) Powell says,(*g*) " It is holden, that after office found upon the writs *de idiota inquirendo,* or *de lunatico inquirendo,* the alienation, gift, or other act, &c., of him who is *non compos mentis,* as well as of him who is an idiot, may be avoided even during his life, in a *scire facias* by the king, who is bound as *pater patriæ,* to protect all his subjects, their goods and estates." There is also a difference between an idiot, *a nativitate,* where the king is absolutely entitled to all his estate, subject only to maintenance, and a lunatic, where he is a mere trustee. In order to avoid incumbrances, it is held that the office shall relate back to the time when the disability arose. Then, without office these incumbrances cannot be avoided. Another distinction taken is, that incumbrances incurred before office found may be avoided by the king; those made after office are void, and in the case of *Webster* v. *Woodford,*(*h*) cited on the other side, the very first sentence pronounced by the Court is, that " It is not a question whether a deed executed by a person *non compos mentis* is voidable for want of capacity in the grantor to convey. All admit that it is." There was no pretence in that case that the deed was void; but it was holden that the lunatic might avoid it. There he sought to avoid his deed. Here he does no such thing. *Beverly's case* also decides that, before office, the acts of the lunatic are voidable; afterwards they are void. The same distinction will be found in Bacon's Abridgment, title Void & Voidable, (B) (C).

(*f*) Wood's Inst. 14.
(*g*) Pow. on Con. 24.

(*h*) 3 Day's Cas. 90.

But admitting that a deed is to be considered void from the period at which the lunacy commences, our mortgage will not be overreached. The commission was executed the 17th Nov. 1818, and finds that Rose had been lunatic for 2 years only. The mortgage was dated February 29th, 1816, a period of 2 years and 8 months before the inquisition. No case, however, can be found, where one can take advantage of an inquisition unless connected in blood or estate with the lunatic.

4. Evidence of adverse possession was properly rejected, because no one can set up an adverse possession to avoid the grant of the state. This question did not arise, nor did the Court pretend to dispose of it, in *Jackson* v. *Hudson,*(*i*) as supposed on the other side. It was put upon the nature of the possession. There was a patent from the state and various conveyances thence down to the lessor, while the Indian possession existed; and the objection of adverse possession applied to these intermediate grants. The Court go on to consider the law of adverse possession as it relates to individuals, and demonstrate that it was not, in that case, sufficient to avoid a private grant.

But the people cannot be disseised ; nor, consequently, their grant avoided by adverse possession. The king cannot be disseised.(*j*) This is said in so many words, in *Taylor* v. *Horde.*(*k*) It is said, on the other side, that the statute avoiding the conveyance of lands held adversely is but an exposition of the common law. This is true except as to the penalty. If here was an adverse possession, what is to prevent the patentee being sued for the penalty? Neither at common law nor by the statute is the conveyance of the people avoided.

But the defendant could not set up an adverse possession, even as against an individual. Both parties derive title from the same source—the lessor under a title derived from Merritt ; and the defendant under a Sheriff's sale upon a judgment against Merritt subsequent to the deed. Merritt would not be entitled to such a defence, and so of the defendant, who derives title from him, and stands in his place.(*l*)

*Margin notes:*

ALBANY, Feb. 1824.

Jackson v. Gumaer.

(*i*) 3 John. Rep. 375.

(*j*) Vin. Ab. Prerogative, (B. d. 4,) pl. 3 Plowd. 546 Dy. 266.

(*k*) 1 Burr. 10.. 3 Bl Com. 257, S. P.

(*l*) *Jackson* v. *Reynolds,* 1 Caines' Rep 444. The same v. *Whitford,* 2 id. 215. The same v. *Graham,* 3 id. 188 The same v. *Harder,* 4 John. Rep. 202. The same v. *Vosburgh,* 7 John. Rep. 186. The same v. *Scott,* 18 John. Rep. 94

Jackson
v.
Gumaer.

(m) *Jackson*
v. *Hart*, 12
Iohn. 77.

(n) 2 Johu.
Rep. 77.

If the patent be considered voidable, for this cause, it must be repealed by a *scire facias.*(m)

*Davis,* in reply. We do not object to the validity of the mortgage on any ground except lunacy. Its want of being properly acknowledged does not avoid it. Other proof might have been received of its execution. The acknowledgment being entirely *ex parte*, the officer should be holden to bring himself strictly within the statute. In *Jackson* v. *Shepard,*(n) the grantor appeared before the officer and made the acknowledgment; yet because the statute was not precisely pursued by stating that he was known, the certificate was holden void. There is every reason for holding the officer strictly to his duty. We are strangers to the witnesses, and have no opportunity to impeach them. The great object, as I observed before, is identity. The certificate may be true, and yet the deed not signed by the grantor described in it. There is no penalty imposed for an imperfect certificate. The legislature required knowledge in the officer, and that this should be expressly certified. No matter how strong his obligation to act correctly, this knowledge cannot be implied, nor can it be made where it is certified thus generally and loosely, to apply to the grantor. The whole must be expressed. If the words, " to me known," were out, no one would pretend that the certificate could avail. All the old certificates, before the act of 1797, were in that form ; and to give effect to this certificate would make the statute a dead letter. It cannot reach the old mischief. It only proves that the officer knew the grantor to be of such a name. It is said that this should be received as *prima facie* evidence, at least. Why so ? We have no power to attack it, because we are strangers to the whole proceeding. This is one reason why such great nicety is required. The whole is a matter of strict right, and should be so treated. No matter how many certificates may heretofore have been incorrect. A greater number will be found correct ; and the balance of custom would no doubt be found with us, if we could try the question by a general examination of the regis-

try officers.   But if otherwise, the Court should not sanction an infraction of the statute.

These remarks are also, in a great measure, applicable to the affidavit.   The statute requires that the officer should certify the appearance of the deponent.   May he depart from such a direction and leave this to be implied.

As to the adverse possession, it is said that the case of *Jackson* v. *Hudson*, applies only to a possession in hostility to an individual ; but a recurrence to dates in that case shows that its effect upon the patent was fairly in question, and Kent, Ch. J. says, that " if the possession of the Indians was sufficient to destroy the deed from the individual of 1761, it would be equally effectual to destroy the grant from government of 1731.   It is conceded that adverse possession avoided a deed at the common law ; and we need not, therefore, resort to the statute.   The government have attempted to grant lands which, at the common law, they have no power to pass.   I agree that the people cannot be disseised ; but the very cases to which we are referred on the other side show that they may be out of possession.   If an alien purchase land, the king has a right to it, but he is out of possession, and the land may be holden adversely to him till office found.   So of the people.(o)   They cannot enter till office found, but when in possession, I admit they cannot be disseised ; the king cannot change or dispense with the common law,(p) and is, therefore subject to the rule which forbids any one to convey unless in possession.   In all cases where an entry would be necessary for the subject, an office found is necessary for the king.   This is the manner in which he is to enter, and as the same rules apply to his right of entry as to that of the subject, so his right of granting is circumscribed by the same restriction.   Another case, showing the manner in which the king's right of entry is to be exercised, is that of *The Wardens & Commonalty of Sadlers*.(q)   It was there held that where the king's tenant dies, when another is in possession at the time of the escheat, there the king shall not be adjudged in possession till the other's seisin and possession are removed.

ALBANY,
Feb. 1824.

Jackson
v.
Gumaer.

(o) *Jackson* v. *Beach*, 1 John. Cas. 399. *The same* v. *Lunn*, 3 John. Cas. 109.

(p) Com. Dig. Prerogative, (D. 7.)

(q) 4 Rep. 58.

Lunacy avoids the deed for all purposes. No matte, whether it was executed before or after the office found. The statute, (17 Ed. 2,) declares the king's right, which is, " that he shall provide that the lands of the lunatics shall be safely kept without waste," &c. The act of finding the inquisition does not make the deed void, but the lands never passed out of the lunatic by his grant, so as to be a moment beyond the reach of the crown. The office merely gives the custody to the king. The validity or invalidity of the lunatic's contracts are not determined by the inquisition, but is open for trial according to the ordinary course of the common law or Chancery. That this must be so, is plain from the circumstance that no office can be found after the luna-

(r) Bever-ly's case, 4 Rep. 127.

tic's death, so that if he die the king can have no title,(r) yet his deed shall be void. In Vin. Abr. (D) pl, 7, 8, it is said that all the acts of a lunatic *in pais* are void, except his feoffments and livery and seisin; and those are only void-able, because of the respect the law gives to a feoffment on the account of its solemnity in the transmutation of a free-hold.(s) And in *Thompson* v. *Leach*,(t) the Court say,

(s) Thompson v. Leach. Comb. 468 3 Salk. 300, 301. S. C. 12 Mod. 173, S. C. & P.

" The surrender of the lunatic was void, *ab initio*, and never had any effect in the law; and, therefore, any person may take advantage of it."

(t) Carth. 435, 436.

It is said that *Zouch* v. *Parsons*,(u) overrules the distinc-tion between an act accompanied with livery and seisin, and any other deed passing an interest, making each voidable only. It is true that something of this is said, but the ground of that case is altogether different, and the *dictum* is entire-ly *obiter*. The conveyance of the infant was mere matter of form, and might clearly he supported upon equitable grounds. He was heir, executor and residuary legatee, and released a mortgage of his testator on payment of the money. There is a farther difference between infants and lunatics than that made in *Thompson* v. *Leach*. Infants' contracts are some-times void and sometimes valid. A contract for necessa-ries is binding, but not so of a lunatic. The Court will find, by all the authorities, that except in cases of fine and feoffment, the acts of a lunatic are merely void. A fine is

(u) 3 Burr. 1804.

in the face of the Court, and a feoffment is in the face of the country, which takes it out of the general rule.

The very definition of a contract is the agreement of persons capable of contracting,(v) or giving a rational assent to its terms. Mental alienation precludes the possibility of this.

In ejectment, the plaintiff must recover on the strength of his own title, not on the weakness of the defendant's ;(w) and it follows that if the mortgage is void, or there is any defect in the plaintiff's proof, judgment should be for the defendant.

It is said that the mortgage is not overreached by the inquisition in point of time ; but this is no objection to its admissibility. The inquisition is only *prima facie* evidence of the facts which it contains ;(x) and we might have gone on to show Rose a lunatic at a period much more than two years before the commission was executed. Of this act the jury on the trial of the cause are the proper judges.

*Curia*, per Savage, Ch. Justice. The first question raised on the trial was as to the sufficiency of the certificate of acknowledgment on the mortgage executed by De Witt Rose. The Judge certifies that the grantor *was known to him*, but does not add that he knew him to be " *the person described in and who executed the deed."* Were we called on to establish a form for such a certificate, I should certainly be for inserting that the grantor was known to the Judge, or other officer taking the acknowledgment, to be the person described in the deed ; but the legislature could not expect the officer to know that the grantor described in the deed actually executed it, otherwise than by his acknowledgment, or proof by a witness. The form used in this case has been in very general use, and the practice in this respect, may perhaps amount to a construction of the act.(y) At all events, I am unwilling to say that titles which depend for proof upon certificates thus drawn, are to be put in jeopardy by the allowance of such a technical objection ; for I cannot but consider the acknowledging officer drawing such a certificate as possessing all the knowledge required by the

ALBANY, Feb. 1824.

Jackson v. Gumaer.

(v) 1 Com on Cont. 2.

(w) Runn. on Ej. 15, 109 117

(x) 2 Madd. Ch. 578. 1 Collinson, 396.

(y) M'Kean v. De Lancy's Lessee, 5 Cranch, 32.

statute. The Judge, in my opinion, decided correctly, that the mortgage should be received in evidence.

Jackson
v.
Gumaer.

The objection to the power of the commissioner to administer the oath and take the affidavit of the regularity of the proceedings, as well as to the form of his certificate, are both untenable.

As to the admissibility of the testimony offered to prove the lunacy of De Witt Rose, when he executed the mortgage, it is clear that the acts of a lunatic before office found are not void but voidable, and it is enough that the defendant does not stand in such a relation to the lunatic as entitles him to avail himself of the testimony.(z)

(z) Beverly's case, 4 Rep. 123.

The evidence of adverse possession was also properly rejected. If such testimony would be proper as between individuals deriving title from the same person, (which it is not necessary to decide,) yet it was not admissible as against the people of the state. The reason which makes a deed void, because executed by a grantor out of possession, is, " for avoiding of maintenance, suppression of right, and stirring up of suits : and, therefore, nothing in action, entry, or re-entry, can be granted over ; for so, under color thereof, pretended titles might be granted to great men, whereby right might be trodden down, and the weak oppressed, which the common law forbiddeth, as men to grant before they be in possession." (Co. Litt. 214, a.) Our statute against champerty and maintenance is in affirmance of the common law, and superadds a forfeiture. The reason of the common law and of the statute cannot be applicable to the state, and therefore the rule fails. That such is the construction put upon a similar statute in the state of Connecticut, appears from the case of *Allen* v. *Hoyt*,(a) and *Barney* v. *Cutler*.(b)

(a) Kirby's Rep. 221.
(b) 1 Root's Rep. 489, 491, per Cur.

On all the points raised, therefore, I am of opinion that the plaintiff is entitled to recover.(c)

New trial denied.

(c) In *Barney* v. *Cutler & Moulthrop*, (1 Root's Rep. 491,) the Superior Court of Connecticut, say, that " Guardians who give deeds of the

lands of their wards, pursuant to a decree of a Court of Chancery; executors, &c., who give deeds of the lands of the deceased by order of the Assembly or the Court of Probate; and collectors who sell lands for payment of taxes by order of law; and the treasurer who gives deeds of lands belonging to the state—cannot be said to be seised or disseised of the lands they undertake to convey. Those who do not act in their own right, or by virtue of any interest they have, but wholly by public authority, cannot be considered as being in any sense within the statute. Besides, most of them are under injunctions to convey in a limited time, which would render the performance of their duty impracticable, if it was necessary, in such cases, that possession should be recovered before a sale would be valid."