## Nelson W. Clark vs. Aaron Mowyer.

Under the Revised Statutes of 1846, it was not necessary that the Auditor General should specify in his notice of tax sales the particular place at the county seat where the sales would take place. A notice, which stated that the sale would be made at such public and convenient place as the county treasurer should select at the county seat, was sufficient in this particular.

And a notice by the county treasurer of the place where the tax sales would be made, posted at the court house, county treasurer's office, and other public places at the county seat, a week before the day of sale, was a reasonable and sufficient notice, if any was required.*

*Heard May 25th. Decided July 15th.*

Case made after judgment from Genesee Circuit.

The action was ejectment for certain lands in township five north, of range six east.

On the trial, the plaintiff proved title from the United States.

The defendant, on his part, gave in evidence deeds executed in due form by the Auditor General upon sales of said lands for taxes delinquent for each of the years 1847, 1848, 1849, 1850, and 1851, and deduced title in himself through them.

The plaintiff, among other things to impeach the validity of said deeds, introduced in evidence the notices under which said sales were held, which were in the following form: "*Auditor General's Office*, Lansing, July 2d, 1849. So much of each of the following described tracts or parcels of land, situated in the county of Genesee, delinquent for unpaid taxes for the years mentioned below, as will be sufficient to pay the taxes, interest, and charges thereon, will

---

* The Chief Justice inclines to the opinion that no notice whatever of the particular place of sale was required, either of the Auditor General or county treasurer.

Justice Christiancy is of opinion that no such notice was necessary — at least where the sale was to be made at the treasurer's office.

Justice Manning holds that the law would require the county treasurer to give a *reasonable notice*, and that the one given in this case was sufficient.

Justice Campbell thinks the place of sale selected by the county treasurer should be specified in the notice of the Auditor General, who, before giving such notice, must be apprised by the county treasurer of such selection.

be sold by the treasurer of said county on the first Monday of October next, at such public and convenient place as he shall select in the village of Flint, the county seat of said county,, according to the statute in such case made and provided. JOHN J. ADAM, Auditor General."

The foregoing was for the sale for delinquent taxes of 1847. For the subsequent years, similar notices were advertised. Appended to such notices were the lists required by law, containing the description of lands to be sold, with the required statement of taxes, interest, &c., and the land in controversy was embraced therein.

It also. appeared in evidence, that the Auditor General, in each of said years, issued a circular to the county treasurer, instructing him to make the sale "at the court house, or place where the circuit court was last held, if practicable; and, if not, then at some other public and convenient place at the county seat of your county, of which you will give public notice at least one week before the sale." And that such notice was given by posting up notices at the court house, county treasurer's office, and other public places at the county seat of said county, in compliance with said instructions. No other notice of the place of sale was given. The sales were made at the court house.

The circuit judge held the said notices insufficient, and rendered judgment for plaintiff. The defendant having excepted to this ruling, a case was made for review upon such exception in this Court.

*W. M. Fenton, J. M. Howard, Geo. V. N. Lothrop,* and *H. H. Emmons,* for defendant.*

*M. Wisner* and *C. I. Walker,* for plaintiff.

* As the argument of this case, on the part of the plaintiff, was *without printed brief,* and the Reporter took no notes of it at the time, and is, consequently, unable to give any abstract of it, the usual statement of points and authorities is omitted entirely.

CHRISTIANCY J.:

The only question in this case is, Whether the notices of sale were sufficient as regards the place of sale and hour of the day.

The statute which prescribes the notices of sale for taxes of the several years in question — after requiring the Auditor General to make out statements of the several parcels of land upon which taxes are delinquent, specifying the amount of taxes due on each parcel, the interest thereon to the first Monday of October thereafter, together with the costs, expenses, &c., and providing for eight weeks' publication of such statements prior to the sale — makes the following provision in reference to the notice which is to accompany the publication of the statements: "The Auditor General shall annex to, and cause to be published with, each of said statements, a notice that so much of each tract or parcel of land described in said statements as will be necessary for the purpose, will be sold by the county treasurer on the first Monday of October next thereafter, at such public and convenient place at the seat of justice of the county as the county treasurer may select, for the payment of the taxes, interest, and charges thereon." — *R. S.* 1846, *Chap.* 20, § 74. This is the only provision of statute in reference to the subject of notice of any of these tax sales; and it is very obvious that it does not *expressly* require any notice of the particular place at the county seat which the county treasurer may select for the sale. This is admitted. But it is contended by the plaintiff's counsel that notice of the place so selected is necessarily implied; and it must be admitted that if necessarily implied in the statute, it is as much a part of its requirements as if it were expressed.

But what particular kind of notice is so implied, the able and learned counsel for the plaintiff have not assumed specifically to define. Whether to be given by the

CLARK *vs.* MOWYER.

Auditor General, or by the county treasurer; whether, if by the latter, it must be published in the same paper and for the same length of time; or whether a publication for a reasonable time, in the same paper, will answer the purpose; or whether for the whole length of time in some other paper in the county; or whether in some other paper for a reasonable time — but that such notice must be given by one of the officers mentioned, and in some one of the modes, and for some one of the times mentioned above, and not simply by posting notices, as was done in this case, they assume to be necessarily implied in the statute.

Now it would seem that an implication of a statute, claimed to be a necessary implication, ought to assume a somewhat more definite and less dubious form. The needle which points in so many different directions can not traverse with much force, nor constitute a safe guide in any direction; and an implication or an inference which tends to the proof of so many alternative propositions, loses at once, and by that diversity of tendency, all claim to the character of a necessary inference in favor of any one of them — because, if any one of them is a necessary implication, it not only deprives all the others of that character, but disproves them entirely. And if any one is a reasonable implication, it detracts much from the reasonableness of every other.

But I propose to examine each of these alternative propositions in detail. Before doing this, however, it may be well to remark that this is purely a question of statute construction. The power of the Legislature to authorize a sale of these lands for the taxes, without any such notice of the place, is admitted. We are not, then, to inquire what we think the Legislature *should* have required in reference to the notice of sale, but what they have *actually seen fit to require*. The Court are not to make or amend the statute, but to construe it as it is; and the whole office of construction is to ascertain and give effect to the intention of the Legislature. And in construing statutes in reference to tax

5 MICH. — 2E.

sales, the rules of construction should be no more strict or technical, nor more loose and fanciful, than in the construction of statutes generally. In all alike, the legislative intent must govern.

The first of the alternative propositions claimed by the plaintiff's counsel is, That the county treasurer should select the particular place of sale at the county seat, and inform the Auditor General of the selection, before he gives his notice of sale, and that the place so selected should be incorporated in the Auditor's notice.

The *first* and obvious answer to this proposition is, That if the Legislature had intended the notice to state the particular house or place selected by the treasurer, it would have been easy, and in the natural course of legislation, upon a matter where certainty in the law was so important, and where any uncertainty might materially affect the revenue of the State, to have said so expressly. It was a matter which could not well have escaped their notice. They had expressly given the treasurer the right to select; and if we believe it did escape their notice, then clearly it cuts off all inference of the intent claimed, and it would then be a *casus omissus,* and not within the statute.

But, *second,* If it were intended that the several county treasurers should so inform the Auditor General of the place selected, before he issued his notice, it would have imposed it as a duty upon the county treasurers to make such selection before that time, and officially to notify the Auditor General of the fact, and have given him, also, a right to demand its performance. But the law, so far from imposing this upon the treasurers as an official duty, has not even authorized them to do so officially; and hence any notification, by such treasurer, of such selection, would be an unofficial act and of no binding authority. Suppose the treasurer was called upon to select and notify the Auditor, and should refuse; could this Court compel him to do so by mandamus, under this law? Clearly, it could not. It is little

less than absurd to suppose that the Legislature intended to leave the revenue of the State thus dependent upon the mere chance of the Auditor's being able to divine beforehand the various places selected, or to be selected, by the several county treasurers in the State, without requiring them to give the information. It is not very reasonable to suppose the Legislature intended to make the public revenue dependent upon the unofficial politeness of thirty or forty different county treasurers, acting upon their separate and individual responsibility, without any of the obligations of official duty.

But, *third*, This proposition is not sustained by the language of the statute. If it had been the intention that the treasurer should first select and notify the Auditor of the place selected, and that he should state the place so selected, it would more properly have used the terms "at such place as the county treasurer may *have selected*," and not "at such place as the treasurer may select." The entire clause looks to the future, and not to the past.

But, *fourth*, Suppose the statute were ambiguous or doubtful as to this point; suppose, even, it were barely susceptible of a construction not requiring the Auditor to state the place; and (what I think is contrary to the fact) that the more obvious construction were such as the plaintiff claims; still, from the very date of the Act it has received a different practical construction in the Auditor General's office, which, in this respect, has been uniform from that day to this. Every sale for taxes made in the State for the last twelve years has been made under this practical construction, and under an Auditor's notice precisely the same as that given in this case—not one in which the place selected by the treasurer has been stated. This practical construction must have been known to the Legislature. We can not suppose them ignorant of what all other men knew, in reference to the public acts of one of the executive departments of the Government, upon which, more than any other, depended the revenue of the State. Yet, with full knowledge of this prac-

tical construction, the Legislature, in 1853, when they entirely remodeled the tax laws of the State, continued this provision without the alteration of a letter. A like general revision of the tax laws is again made in 1858, and this provision is retained without alteration. Rights have become vested under this construction to the amount of many hundred thousands, and perhaps even millions of dollars; and it is now too late to disturb this construction (unless it be clearly against any possible construction of the statute), without wantonly disregarding the principles of justice and sound policy, for centuries well settled by judicial decisions. That such legislative sanction should have weight in the construction of the statute, see *Coutant vs. People*, 11 *Wend.* 511; *Rex vs. Loxdale*, 1 *Burr.* 447; *Henry vs. Tilson*, 17 *Vt.* 479; *McKenzie vs. State*, 6 *Eng.* 594; *U. S. vs. Freeman*, 3 *How.* 557.

That the practical construction so long given by the Auditors-General in their notices of sale under this section should control in this case, see 2 *Coke R.* 81; *Coke on Lit.* 186, *Note*; *Earl of Buckinghamshire vs. Drury*, 2 *Eden Ch.* 61, 64, 74; *U. S. Bank vs. Halstead*, 10 *Wheat.* 51, 63; *Bank of Utica vs. Mersereau*, 3 *Barb. Ch.* 530, 579. Practical construction by Departments at Washington: *Surgett vs. Lapice*, 8 *How.* 68; *Bissell vs. Penrose*, 8 *How.* 336. Practical construction of Constitution: *Stuart vs. Laird*, 1 *Cranch*, 299; *McCulloch vs. Maryland*, 4 *Wheat.* 316; *Briscoe vs. Bank of Kentucky*, 11 *Pet.* 319; *U. S. vs. Hudson*, 7 *Cranch*, 32. As to form of acknowledgment of deeds: *McFerran vs. Powers*, 1 *S. & R.* 105; 5 *Cranch*, 22; see also *Jackson vs. Gumaer*, 2 *Cow.* 552.

And, *fifth*, This first proposition, contended for by the plaintiff, defeats the obvious purpose of the Legislature in giving to the county treasurer the right to select the particular place at the seat of justice, as will be shown when I come to speak of the objects of this provision.

The second alternative proposition of the plaintiff is, That

if the notice of the place is not required to be published by the Auditor General, as claimed in the first proposition, then it is to be inferred that the county treasurer is required to publish notices of the place selected, in the same paper, and for the same length of time. The answers to this proposition are equally, if not still more, obvious.

*First*, The statute has nowhere required the county treasurer to give any such notice, nor any notice whatever, nor alluded in any form to the subject of such notice. It is entirely silent on the subject, while it has carefully and minutely defined that to be given by the Auditor General. If any notice was intended to be given by the treasurer, there were the same reasons for accurately defining that also. Hence, to give the statute the construction claimed is to interpolate an entirely new and substantive provision which the Legislature did not see fit to insert, and to impose a new official duty which they did not see fit to impose, and which, if they intended to require, there was every reason to express, and no imaginable reason for omitting to express. No intelligible reason for such omission has been, or can be, suggested by those who claim that the Legislature intended to require the publication of such notice by the treasurer.

*Second*, This proposition implies that the law has made it the duty of the Auditor General, at least eight weeks before the sale, to notify the several county treasurers of the paper which he may have designated, under section 72, for the publication of his statements and notice; otherwise the county treasurer could not know the paper, nor insert his notice at the same time. But the entire silence of the statute negatives any such implication, or any such duty. The statutes nowhere require the Auditor to notify the treasurer of the paper designated, nor to publish any notice of such selection, nor in any manner to communicate with the treasurer on the subject; nor is any right given to the treasurer to demand the information. If it be said that the treasurer would be likely to find out the paper beforehand, or might do so by

inquiring at the office of each paper in the county, the reply is, 1st, That any such information would be unofficial, and he has no right to rely upon it; 2d, It is leaving the collection of the State revenue to mere chance. Besides, the statute provides that if there be no such paper, as described, in the county (as is, or at least has been, the case in several), the Auditor may publish in some paper in any adjoining county, and if none in an adjoining county, then in the State paper.

Again: The statute (§ 72) provides that if any paper so designated shall neglect or refuse to print or publish the statements, or if, from any other cause, it shall become impracticable, he shall designate some other paper for that purpose. It may, therefore, be the last day prior to the commencement of the eight weeks, before the Auditor himself may know the paper to be designated, and the paper may be in a distant part of the State, or the State paper. How then is the treasurer to know the paper in time to insert his notice at the same time? Does the law require him to know it by inspiration?

But the extreme caution shown by the Legislature in providing for a neglect or refusal of any paper designated to publish, does not look much as if they intended to leave any matter connected with these sales to mere chance, but to provide expressly for every contingency, by imposing upon some public officer an official duty appropriate to the contingency. But so far from providing for such a contingency in the case of a treasurer's notice, they have not even, in terms, required any treasurer's notice at all, nor in the most distant manner alluded to the subject, nor provided him with any means of ascertaining the paper in which any such notice is to be published, if required by the Court.

*Third*, To support the proposition contended for, there being in the statute no obvious hiatus, or apparent mistake, or conflict, we must hold that the Legislature intended

CLARK vs. MOWYER.

to require the county treasurer to give this notice, and yet *purposely omitted to express such intention, or to make any provision which should make it possible for him to comply.* In such a case, we must hold that they *intended* to omit what they *have omitted*, as much as to *express* what they *have expressed.* The proposition, therefore, leads to gross absurdity, and there is nothing in the context or the subject-matter from which it can derive support.

*Fourth,* Though entire uniformity could hardly be expected in the action of thirty or forty county treasurers, each acting upon his own independent judgment, and without a common standard, yet with all the commendable industry of the counsel in this case, and that of *Wisner vs. Davenport,* in procuring newspapers containing such notices from various parts of the State, they were able thus to show but one in which such treasurer's notice of the place had been published the entire eight weeks, but the notices produced varied from three to seven weeks. Another instance, from the county of Monroe, was cited on the argument from verbal report, which at the time I was inclined to believe correct, but which, on inquiry, I find to have been without foundation. And from all the investigations I have been able to make, I am satisfied that, taking all the sales in the several counties for the ten years ending with 1856, not one treasurer's sale in one hundred has been preceded by a publication of such treasurer's notice for the full length of time — certainly not one in fifty. This, to all practical purposes, is substantial uniformity in a practical construction against such co-extensive notice; and this proposition, therefore, falls within the same rule stated in the fourth answer to the first proposition, and the same authorities apply with full force. Beyond this point there has been no uniformity of action with the several treasurers which can be of any weight in settling a practical construction, but the greatest diversity; some publishing in a newspaper for three, four, five, six, or seven weeks; more who have not published at all, but posted notices, as in this case; and many who did neither the one nor the other.

But, *fifth*, This proposition of co-extensive notice by the treasurer, like the first, ignores and defeats the purposes for which the selection was given to the treasurer.

The third proposition of the plaintiff is, That, if notice of the place be not required to be given by the Auditor General, as claimed by the first proposition, nor by the treasurer for the whole time, as claimed by the second, then it must be published by the county treasurer in the same paper for a *reasonable* time.

Answer: 1st. What is reasonable time must depend upon the circumstances of each particular case. Thus, in the case of these notices, if the county seat were but a very small place, with but few buildings, all in full view of each other, if any notice were required, a very short one would be reasonable; but in a large town like Detroit, a longer period would be required to bring it within the rule. The rule, therefore, would not probably be the same in any two counties in the State; and, as there is no tribunal or officer to prescribe in advance what shall be a reasonable time, or reasonable notice, each county treasurer must judge for himself; and this, too, under circumstances in which it is impossible for him to know, or for any lawyer to inform him, what such reasonable time or reasonable notice is—which in fact, can never be known until the end of a long litigation, to grow out of the act, after, and perhaps many years after, all the lands have been sold, and many of them re-sold, and in the hands of third or fourth purchasers, and, perhaps, under expensive improvement.

We must not forget that this is nothing but a question of legislative intention, to be deduced from an Act which provides for raising the public revenue from the sale of lands for taxes, and that, without such revenue, every operation of Government, from the State Departments to the school districts, must be more or less paralyzed. In such a case we must suppose the Legislature were seeking to provide a system which should hold out reasonable inducements to pur

chasers to invest their money in the purchase of these lands, rather than one which would deter such purchasers; as, without purchasers, the tax must be lost, and their object defeated. But, if the proposition now under consideration be correct, we must believe the Legislature intended to deter all men from purchasing at such sales; and, to this end, *purposely avoided making any specific provision* as to the form or manner of giving notice, and as to the length of time it might be required to be published, and leaving it upon the question of reasonable notice and reasonable time, so as to render it impossible for any purchaser to know — and depriving him of all means of ascertaining — whether the notice were sufficient or not, and whether he should obtain anything or nothing by his purchase, until the court of last resort should decide the point, at the end of a long and expensive litigation, at some indefinite period in the future. But even when the court should have decided one case, it would be little or no guide in any other county. It must be admitted that, if it were the intention of the Legislature to prevent the sale of lands for taxes, and to encourage interminable litigation, they could not have devised a better plan. And all this they *must* have *intended if they intended* to adopt the principle of *reasonable notice*, or publication for a *reasonable time;* and if they *did not so intend*, then certainly the proposition can not be maintained, as the question is purely *one of legislative intent.* We can not impute to the Legislature intentions thus suicidal and absurd.

There was no intrinsic difficulty in providing the kind of notice and length of publication, if one were intended to be required. The Legislature could as easily have made definite provision for such notice and such publication as they could for that of the Auditor General, and as they have for various other notices required by the statutes.

It is true that in providing for proceedings in a court of justice, or by officers under their control, certain notices are sometimes left to implication, and not expressly defined by

the statute, for the obvious reason that the courts are deemed better competent to judge what may be proper in the particular case before them than the Legislature could be to provide definitely in advance; but in such case the reasonableness of such notice, or of the time, is fixed and determined by the judgment of the court before the law is fully administered, or rights depending upon it definitely fixed. In such cases, the neglect to provide expressly for such notice, in the statute, would furnish much less ground for contending that the notice was not intended to be required, or that the time of such notice was not intended to be merely a reasonable time. The cases cited by the plaintiff's counsel on this head are chiefly, if not entirely, of this kind. But they have no analogy here.

The first and fifth answers to the first proposition, and the first, third, and fifth answers to the second proposition, are equally applicable to this, and I merely refer to them to save repetition.

The fourth proposition of the plaintiff is, That if the notice of the place selected is not required to be given by the Auditor General, as claimed in the first proposition, nor by the county treasurer, as claimed by the second or third, then the treasurer's notice should at least be published for the whole time in *some* newspaper of the county. The answers given to the second proposition apply with equal, if not greater, force to this, and I shall not repeat them.

The plaintiff's fifth proposition is for the publication for a reasonable time, in some paper of the county, and falls within the same principle as the third, having, if possible, still less plausible support. In fact, the fourth and fifth propositions were not much insisted upon, and the counsel even doubted whether they would be sufficient; but it was claimed that if neither of the others was sanctioned by the Court, then that these, or one of them, ought to be required; that at least the notice ought to be published in some paper for the whole, or a reasonable, time.

It may be remarked here, generally, that all these propositions, and the very able and ingenious arguments of the counsel in support of them, were based rather upon matters outside of the statute, than upon anything within the statute itself—claiming that upon general principles such notice ought to be required. Arguments of this kind wholly ignore the obvious distinction between the legislative and judicial powers. They might be entitled to more or less weight in a legislative body, but except as they may bear upon the question of legislative intent, where that intent is otherwise doubtful, they have no application in a case like this, and in a court of law whose duty it is to give effect to the statute as it is, and not to amend it. If there were any want of power to authorize a sale without such notice, then they might have weight, as bearing upon the question of legislative intent.

Of all the various propositions claimed by the plaintiff, the only one, it seems to me, which finds any plausible or even possible support in the language of the statute, is the first. All the others, I think, are in direct conflict with the language; and this becomes equally inconsistent when the statute is examined as a whole, and is clearly excluded by the long and uniform practical construction, which is supported by the more obvious import of the language.

It was also insisted by the plaintiff's counsel that, from the language of section 105 of the same chapter, in reference to notice of sale of State tax lands, an inference was to be drawn that the particular place of sale at the seat of justice must be selected by the treasurer, and notice of it given prior to the time of publishing the notice of sale of such lands by the Auditor General (which is to be a six weeks' notice), and that the Auditor's notice of the sale of such State tax lands must state the place thus selected: because this section requires the Auditor General to give notice that such lands will be sold "at the time and place designated for the ordinary tax sales." This is but a repetition, in effect, of the first proposition in reference to the Auditor's notice

of the ordinary sales, and stands precisely upon the same ground; and the same answer will apply to this as to the first proposition, and need not be repeated.

The "time and place designated," as used in this section, obviously refer to the time and place already fixed by the statute for the Auditor's notice; viz., the first Monday in October, and the seat of justice of the county. Suppose the statute, instead of "the seat of justice of the county," had said, "at the court house of the county," and given the treasurer the right to select the particular room in the court house (and many court houses have a large number of rooms, not in view, and scarcely in hearing of each other), would it be contended that the law had not designated the place, or that the Auditor's notice of a sale at the court house was not a notice of the place designated, because the particular room to be selected by the treasurer had not been mentioned? The principle is the same here. No duty is imposed upon the treasurer by this section, and no such construction ever was, or could be, given to it.

I come now to what I deem to be the obvious meaning and intention of the statute in reference to a notice of sale.

Section 74, from which so many different inferences are sought to be drawn by construction, is, I think, scarcely open to any inference or construction at all. It was, I think, as its language plainly imports, intended to prescribe fully and particularly what the notice of the Auditor General should contain, and *all* it should contain (except the merely formal part of date and signature), and that the notice provided for was intended substantially to follow the language of the statute in reference to the statement of place, as much as in reference to that of time, or any other fact to be stated in the notice. Such is the plain, natural, and ordinary import of the words, and such has been the understanding and the practice of that department of the Government for whose guidance it was adopted, from the time of its passage down to this day. There is nothing in the section itself, or in the context, to suggest any other intention.

But the plaintiff's counsel, overlooking the plain and obvious import of the language, take it for granted that there must be some occult meaning, not apparent in the words, but resulting from some general principle, outside of the Act, which they think ought to have been incorporated in it, and therefore endeavor to extort an inference that, in some unknown form or shape, that principle must be found there. In attempting to avoid some imaginary evils and inconsistencies which they assume may result from the literal meaning, they extort from the statute various inferences which, I think, produce real conflicts and inconsistencies, and which are at war with the whole system established by the Act; while the plain, literal, and obvious meaning is in perfect harmony with every part of the system. There is no ambiguity, no contradiction; and where there is no ambiguity, the statute is not to be *construed*, but *enforced*, by the court, according to its literal and obvious meaning.

Any material omission in the Auditor's notice of any one of the requisites prescribed in this section, or the insertion of any matter inconsistent with what is prescribed, would, I think, vitiate the notice. The insertion of the particular place at the seat of justice would be a clear excess of authority on the part of the Auditor, as it would be exercising a right of selection which the law has vested in the treasurer (and which, I think, he may exercise down to the day of sale, and even during the sale, for reasons which I shall presently state); and the treasurer would not be bound by the place so mentioned by the Auditor, though doubtless the treasurer might cure the error by selecting or adopting the same place.

This notice of the Auditor General, being the only one which the statute has mentioned, or alluded to, in connection with the tax sales, is, I think, the only one required by the statute to be published. Selection of place is *one* thing, and previous notice of such selection is *another*; they are not and can not, by construction, be made identical. It may be

easy to *assert* their identity; the attempt to prove it, how-
ever, has been prudently omitted.

The statute now in question is the first since the organ-
ization of the State which gave to the treasurer the right of
selecting the place at the seat of justice; and no statute
previous to this had *expressly* required the sale to be at the
seat of justice. — See *R. S.* 1838, *pp.* 96 *and* 97; *Laws of*
1843, *pp.* 78 *and* 79. But the sale was to be made by the
county treasurer, and the lists, as now, to be furnished by
the Auditor General. The county treasurer was the officer
authorized to receive payment of taxes, and kept the records
relating to them, and was, by the statute, required to keep
his office at the seat of justice of the county (*R. S.* 1838,
*p.* 42); and the sale being an official act, and his office a
public office, the natural and necessary inference was that
the sale was to be at his office; certainly, unless from some
necessity he should be compelled to seek another place, and
his right to do this might be doubtful. Then came the Re-
vised Statutes of 1846, now in question; and under these
statutes, the county treasurer was required to keep his office
at the seat of justice of the county (*p.* 71, § 48); and by
the Constitution he is now required to keep it there. To
him the several township treasurers are required to return
the lists of lands delinquent for taxes, and he is to "enter
the same at length in the books in his office, provided for
that purpose." — *Chap.* 20, § 59. He is expressly authorized to
receive, and all persons to pay, any such delinquent taxes
upon any lands in the county, with interest and all charges,
"at any time before they are sold for taxes." — § 62. He is
to issue duplicate receipts for taxes so paid, and to account
with the State Treasurer therefor. — §§ 63 *to* 68. Section 69
provides that the lands shall be sold for taxes "in the same
county from which they were returned, or in which the lands
were situated at the time the taxes were assessed." By sec-
tion 75 (immediately following the provision in reference to
notice now in question), the Auditor General is required, as

soon after the first Monday of September as shall be prac-
ticable, to transmit to the county treasurers lists of all lands
described in the respective statements, on which the taxes,
interest, and charges shall have been paid, and these, with
those lands on which taxes have been paid at the county
treasurer's office, are to be struck from the lists advertised
for sale.   Then follow the provisions in reference to the sale
(which is to commence on the day designated in the notice,
and continue from day to day till the lands are sold), the
payment of bids to the treasurer, the kind of funds to be
received, and the certificates to be issued to the purchasers.

All these acts and duties of the treasurer are official du-
ties and official acts; and in the absence of any other pro-
visions, would, by a necessary implication, it seems to me, be
understood to be done at his office, where the books, records
and lists necessary to their performance are kept, upon which
the necessary entries are to be made, and the records pre-
served.   And but for the particular provision as to the selec-
tion of the place, the inference would be that the sale must
be at the office.   But if the sale could not, under any cir-
cumstances, be held at any other place, accidents might occur,
or circumstances arise, even after the notice of sale was pub-
lished, which would defeat the sale for the entire year.   The
office might be burned down, it might be injured by flood
or tempest so as to render it unfit for the purpose, or a con-
tagious disease might break out in the neighborhood, ren-
dering it unsafe for the transaction of business, or as a resort
for bidders.   And a great variety of other circumstances
might arise which would entirely defeat the sale.   Any of
these accidents or casualties might occur, and would be just
as likely to occur after the publication of the Auditor's (or
any other) notice as before, and down to the very day of
the sale, and even during the sale.   And, as certainty in the
collection of the revenue was of the utmost importance, a
prudent legislative foresight ought to provide for such con-
tingencies.

Again: The office of the treasurer might be too small to accommodate the concourse of bidders resorting to the sale; and, as it could not always be known in advance how many might attend, it might become necessary, on the very day of the sale, or any day of the sale, for the treasurer to select some other building. Considerations of this latter kind, or of convenience only, might sometimes exist, and their consequences be appreciated before the publication of the notices.

Now, it was for the obvious reasons above mentioned, it seems to me, and for such as these, that the Legislature gave to the treasurer the right of selecting for the sale " a public and convenient place at the seat of justice of the county"— *chiefly* to provide against contingencies which might happen *as well at any time after* the notice of sale, as *before,* and which, but for this, might, in the opinion of the Legislature, prevent a valid sale, — as well as, to some extent, to provide against inconveniences of place merely. It was the same cautious foresight which led them to provide for the contingency of the refusal of any paper to publish the Auditor's lists and notices.

But all these objects, so far as relates to occurrences *after* the notice of sale, would be entirely defeated by any one of the constructions claimed by the plaintiff, or by any construction which should require previous notice of the selection of the precise place. I see nothing, therefore, in this provision requiring previous publication of notice of such place. But the main objects for giving the county treasurer such right of selection, would be clearly defeated by requiring such previous notice. And notice is no more implied in the term "select" than in the term "choose"; and the effect of the provision, I think, is precisely the same as if the statute had required the Auditor to give notice of the sale to be held at such public and convenient place, at the seat of justice, as the treasurer should *choose to hold it.*

I think it is fairly to be inferred that the sale will still be held at the treasurer's office, unless, for some such reason

as those above stated, the treasurer shall see fit to select some other public and convenient place, at the same county seat. The treasurer being the only officer in the county having any control over, or connection with, the collection of delinquent taxes on lands within the county, possessing all the records and papers in connection with them, and keeping them in his public office, at the seat of justice, that office is the place to which all men are, by law, referred for any inquiries in reference to the payment of such taxes, or the sale of the lands for non-payment. And the law having fixed the day when the sale is to commence, and the county seat as the place within which it must be held, the law and the Auditor's notice refer all men to the treasurer for the particular place within the county seat, and for the precise hour when the sale will commence, on the first or any other day of the sale. Suppose the notice had fixed the precise hour for the sale to open on the first day, could not the treasurer commence his sale at a different hour the next day, by giving verbal notice to the bidders at the close of the previous day? He may, by waiting at his office till bidders had collected there, with equal propriety give the like information as to the hour for the first day, when the hour is not fixed by law, nor by the Auditor's notice.

The county treasurer's office, in the absence of any notice to the contrary, is the place to which all men of common sense would naturally go for this purpose. And unless the sale be held at some other place, I can see no practical object in giving any notice at all. The simply holding the sale there or elsewhere is, I think, a selection of the place within the meaning of the law.

But suppose he selects some other public and convenient place at the seat of justice, is any previous notice necessary? Doubtless fairness and good faith are necessary; but unless some other place is selected, for a cause occurring after the sale has commenced, the treasurer will have determined upon the place before the sale. Persons calling at his office will

be informed of the fact, and it will be matter of public notoriety, and any man calling at his office on the morning of the sale will be sure to learn the fact. The law requires him to keep a public office there. He has many other official duties to perform, besides that of selling lands—duties which may at any time be required while the tax sales are going on. He is authorized to appoint a deputy, and if absent himself from the office, the duties of his office, in which the public are concerned, would require him, I think, to have such deputy always, at business hours, in attendance at the office, who would, of course, direct all persons where the place of sale was. But if no deputy or other person were left in the office, a conspicuous notice on the door of his office would give the like information; and especially if such notices are also publicly posted in several other of the most public places for a week in advance, does any man believe that there would be any difficulty in finding the place of sale, by any person who was honestly seeking for it? Such notices were given in this case, that the sale would be at the court house in the village of Flint (the county seat), where the sale actually took place; and in my opinion they were entirely sufficient (unless it were clearly shown that the place was not publicly known), even if the statute had prescribed that reasonable notice of the selection by the treasurer should be given; though it derives no additional validity from being directed by the Auditor General, who very clearly possesses no authority either to select the place or to direct the manner of giving notice of the selection. He may advise, but he can not direct.

But it was said on the argument that, though the people at the county seat might know, yet strangers would not. The answer to this is, that a stranger would know no better if the particular building were mentioned in the notice; he would still be compelled to inquire outside of the notice, after his arrival, where to find such particular place, and he may as well inquire for the one as the other. But sup

pose the first man asked could not tell. No notice appearing, he would naturally infer it was at the treasurer's office, or that that was the place for the authentic information; and by going there he would receive the information. But suppose he lost ten minutes in these inquiries (and I doubt whether any man ever lost so much in such inquiries which he would not equally have lost if the Auditor's, or any other notice, had stated the exact place), what loss will he have sustained, even if his land may have been sold in the meantime? He has not a cent additional expense to pay to redeem; and this he may do at any time within a year, by paying only the interest, and he has already had nearly two years before the sale. Those who wish to purchase at such sales will be sure to start early enough for the purpose. No purchasers, and no one seeking to purchase, were ever known to complain of a want of notice of the place. The complaint is confined to those whose lands have been sold for the non-payment of taxes, and who have failed to perform their first duties to the State.

The truth is, that a treasurer's sale for taxes is a very different affair from an ordinary sheriff's sale, mortgage sale, or probate sale, in which but few persons take an interest, and which usually consists of a single item, or but few items, and is generally completed in an hour. The tax sale is a matter of public interest and public notoriety, and the place is always *in fact* well and publicly known. It is the work of several days, and often of several weeks. It consists of a great number of items or separate sales, each of which stands to a great extent upon its own merits. It can not, like a sheriff's sale, be made in the street or in the field. The treasurer must have his books and records with him, clerks to make out papers, and tables and writing materials around him. No practical difficulty has ever occurred, so far as is yet known, in ascertaining the place. No such complaint is made in this case.

But it was said on the argument that, unless such previous

notice of the place and hour were required to be published, the treasurer might select some by-place, keep the fact to himself, and notify only his favorites; or open the sale immediately after midnight, on the day of sale, or at an unseasonable hour; or he might change the place, without any previous intimation of the fact, even after the sale had commenced. The answer to all such imaginary cases suggested by the counsel, is that it will be time enough to decide them when they come before the Court; though no one can doubt that any of the acts supposed would be a clear violation of official duty—a clear case of fraud — and would render such sale void, under any construction of the law. But the plaintiff would have us presume that the officer has violated, and will violate, his official duty, because he has the physical power to do so. Such physical power every officer has, in all cases, to violate his duty; yet the law compels us to presume that every officer has faithfully and honestly performed his official duty, till the contrary is proved.

The judgment of the Court below must be reversed, and a new trial granted.

MARTIN Ch. J.:

The construction of statutes enacted to enable Government to enforce the collection of taxes, should be governed by the same rational rules which are applied to those enacted to enforce obligations between individuals.

The duty of the State to protect the person and property of the citizen, and that of the citizen to contribute of his means to enable the State to discharge this duty, are fundamental,—underlying both the political, and social fabric; and the performance of these duties is essential to the permanency of government, and to the well-being of society. These duties are of mutual obligation, the one being adequate consideration for the other. These considerations have influenced the courts of this State for the last few years, with but few

exceptions, to reject the rigid rules which were formerly ap-
plied to this class of cases, and sometimes created for the
occasion, and to require only a strict execution of the man-
datory parts of the law, in the same degree as is required
in the enforcement of statutes upon other subjects.

The argument employed in favor of a rigid construction
of the law in these cases, and which extends the rule of
strict construction beyond its ordinary limits, is based upon
the hypothesis that the proceedings are *ex parte* and sum-
mary, and a condemnation of land in the exercise of the
powers of pre-eminent sovereignty. But although the pro-
ceedings are *ex parte* and summary, yet they are those se-
lected by the citizens themselves, for the occasion, and after
ample time afforded to avoid them by the payment of the tax.

The further reason, I think, is unsound. I can not regard
these proceedings as condemnation of land, in virtue of pre-
eminent sovereignty. When land is thus condemned, it is
because of the public necessity *for its use*, as for occupation
for a road or fort, or for other public use, and never for
sale that its proceeds may be applied to public purposes.
In all cases of the exercise of this power, adequate compen-
sation is to be made to the party divested of his property;
but when land is sold for delinquent taxes, the Government
receives nothing but the amount of the tax. The State con-
demns nothing *to its use*—it simply enforces the obligation
of the tax-payer, by selling his land to make the money due
from him—in this respect occupying the position of a cre-
ditor, rather than of a sovereign; or, if the latter, of a sove-
reign to whom an obligation is due, which has been lawfully
imposed, and the discharge of which has been omitted or
refused. The enforcement of general revenue laws is, to my
mind, a very different thing from the taking of land for
present necessities founded upon no pre-existing obligation
or duty of the owner. I regard the sale of lands for de-
linquent taxes as a remedial measure, somewhat, although not
strictly, analogous to an execution for the enforcement of a

judgment, or a foreclosure at law for the satisfaction of a
mortgage. And although a strict compliance with the statute
may and should be required, yet this may be had without
forced constructions, or the invocation of abstruse technical-
ities to aid in its interpretation. The implied obligation of
the citizen to the State is as strong and as binding as that
between individuals, and requires the same facilities for en-
forcement, — the law of the land creating the one as much
as the agreement of parties creates the other. Nor is the
case different if the land be charged as non-resident; for it
has its owner, who, if a citizen, has the reciprocal obligation
of protection to person and property, and, if he be not, has
that of protection to his property; and the ownership raises
the duty.

In the present case, it is not contended but what all that
the statute requires in *positive terms* has been done; but it
is insisted that from the language of the statute a duty is
impliedly imposed upon the county treasurer which he has
insufficiently performed. The provisions of the statute upon
which this claim is founded (*R. S.* 1846, *pp.* 113, 114, §§ 69,
76), impose upon the Auditor General the entire authority
and control over the sale of lands delinquent for taxes. He
is required to prepare the statement of lands liable to sale,
to designate the paper in which it shall be published, and to
cause such statement, with a notice of the time and place of
sale, and the person by whom the sale will be conducted, to
be published. The county treasurer, in making the sale, acts
under his direction, and not solely in virtue of his office
under the authority of his county. The language of the
statute clearly indicates this.

Yet it is insisted that while the county treasurer may,
and often does, remain in ignorance of the paper selected
by the Auditor General for the publication of his statement
and notice, until he sees it in such paper, the law imposes
upon him the duty of publishing concurrently with the Audi-
tor's notice—in the same paper, and for the same length of

time—his notice of the place selected by him at which he will conduct such sale. The language of the statute on which this claim is based, is as follows: "The Auditor General shall annex to, and cause to be published with, each of said statements, a notice that so much of each tract or parcel of land described in such statement as will be necessary, will be sold by the county treasurer on the first Monday of October next thereafter, at such public and convenient place at the seat of justice of the county as the county treasurer *may select*," &c. From this statute it appears that the Auditor General is the only person *required* to give the notice of sale; that the law ascertains the time and the place of the sale, and prescribes the contents of his notice, and by that (and that only, for there is no express command in the statute) a duty is impliedly imposed upon the county treasurer to *select* a suitable and convenient place within the precincts designated by the statute, where such sale will be conducted. Upon this implied duty a further implication of the duty of publication of such selection is attempted to be raised.

If the statute had required the publication of the tax list and notice of sale to have been made by the county treasurer instead of the Auditor General, or even that they should pass through his hands to the printer, there would be some plausibility in holding that notice of his selection of the place within the seat of justice of his county, where he would conduct the sale, should be published with, and concurrently with, such list and notice. But when he neither publishes such list and notice, nor has the power to select the paper in which they shall be published, nor knowledge of them, except as other persons, through the medium of the paper in which the Auditor General inserts them, until perhaps long after their appearance, the rule contended for becomes impossible of execution. Nor was it ever intended. The language of the Auditor General's notice, as prescribed by the statute, informs all concerned that the sale will commence on a day certain, at the seat of justice of the county where the

lands lie, and will be conducted at such public and conven-
ient place therein as the county treasurer *may* select. This
language clearly implies, that the Legislature contemplated
the action of the treasurer to be after the notice of the Au-
ditor, and left the time of such selection indefinite, that it
might be made as emergency or particular circumstances
might render necessary. If the intention had been that the
county treasurer should give a notice concurrently with that
of the Auditor General, provision would have been made for
the interchange of the information necessary to the perform-
ance of such duty. On the other hand, had the Legislature
contemplated that the treasurer would remain ignorant of the
time of the Auditor General's first insertion of notice, and of
the paper selected for the purpose of notice, and that his
selection should be independent of, and subsequent to, such
notice, no language could have been employed to indicate
such purpose stronger than that here used, if interpreted ac-
cording to its natural import. *May* never meant *might* or
*had;* and an impossibility is never fairly to be presumed as
within legislative intention. The provisions which exist re-
specting the Auditor General's notices of sales of lands situa-
ted in counties in which no paper is published, coupled with
the fact that with their publication the county treasurers have
nothing to do, shows the impracticability of the construction
contended for. For instance, how could the requisite notices,
under it, be given for sale in the counties of Manitou, Emmet,
or Cheboygan, or in those of the extreme north, so as to
render them legal? It is no answer to this inquiry to
say that the Auditor General may inform the county treas-
urer, a sufficient length of time in advance, of the paper in
which he purposes to insert his notice, so that such treasurer
may insert his therein also; as this duty is not required of
him by the statute, and circumstances may prevent such se-
lection by him, until too late to give any notice to the
treasurer. If the Auditor General performs his duty, and
nothing more, or if he is prevented making his selection until

immediately preceding the publication of his notice, this would be an utter impossibility; and we must presume that the Legislature had all these considerations in view, when it particularly and definitely prescribed his duties, and the terms of the notice he was to give, and was silent as to the time when the county treasurer's selection was to be made, or the manner in which it was to be communicated to the public. The Legislature never intended to leave the collection of the revenues of the State dependent upon accidents, or the caprice of any one. It is very evident, therefore, that it was never intended that notice of the particular place selected by him, within the "seat of justice of his county" should be given by the county treasurer concurrently with that of the Auditor General.

The same difficulties will arise, if, as is claimed by the plaintiff's counsel as an alternative proposition, the Auditor General is required to give this notice. Indeed, to impose this duty upon him, would subject the revenue of the State to the caprice of its several county treasurers, and would indeed hedge government around with obstacles, which would often render it impotent to enforce the payment of the taxes it has lawfully imposed, though such enforcement is rendered necessary by default of duty of the person taxed.

The practical interpretation of this law, for a long period of time, has great weight, also, in the determination of this question. For the last twelve years, during which this law has existed, the Government has not supposed such a notice by the county treasurer to be necessary; nor, in fact, have the tax - payers supposed it: otherwise, a question of this magnitude would not have been permitted to sleep for so long a period. This law has been re - enacted; and although the practical construction of a law when its language is unambiguous, is not obligatory upon courts, yet when the interpretation sought is inferential, and a contrary one has been given to it by the executive departments of the State for so long a period, and rights and titles have been acquired under

it, and the same law has been re-enacted, it is the duty of courts to respect such construction, and to interpret the law consistently with it. The grossest injustice would result from a contrary rule.

Since the Revised Statutes of 1846, the practice of the Auditor General's office seems generally to have been to instruct the county treasurers to give notice of their selection, by publication or posting for some short period prior to the sale. But this instruction has not been on the hypothesis that notice for any definite time, or given in any particular mode, was required, and has not been uniformly given; and no instance, to my knowledge, can be found, unless since the decision of *Niles vs. Walker*, where a concurrent notice has been given — certainly none in which it has been required. Nor have the notices been uniform. Sometimes they have been published in a newspaper, sometimes been posted, and in some instances none at all has been given, and there has been no uniformity in time. Practically, no inconvenience has arisen, nor injustice resulted, from this construction and practice, and no single instance, I presume, has occurred of ignorance, upon fair inquiry, of the treasurer's selection. From the nature of things, difficulties of this nature can not arise. The proceeding is of a public nature, in which all are interested; and concealment is impossible, except by criminal malfeasance of office, which would avoid the whole sale. A presumption of such malfeasance the Legislature does not recognize in the enactment of general laws, nor will courts entertain it in construing or administering them.

On the day and at the place designated in the Auditor General's notice, persons desirous to purchase at the sale congregate, and then and there, in reality, the inquiry is first made at what spot the sale will be conducted. This question is almost universally put and answered at the county treasurer's office, to which people naturally resort for the information; and the publication or posting of notices will hardly obviate the necessity for such personal inquiry. By strangers,

the inquiry will of course, and almost of necessity, be personal; by residents no notice, or but a short one, is needed. If the county treasurer posts, as in this instance, notices in public places for any reasonable period, he has designated his selection so as to render his and the Auditor General's a perfect notice within the strictest rules governing notices.

For myself, I am inclined to the opinion that no notice whatever by the county treasurer is required; but this question is not before us for decision, and I can therefore readily concur in the opinions of my brothers Manning and Christiancy, that, at most, but a reasonable notice is required, and that the one given in this case was sufficient.

I have given my views upon this question in more extended form than I otherwise should, because of the decision of *Niles vs. Walker* in which I participated. I then held, as did the entire bench then sitting, that a notice in all respects similar to this was insufficient. But no opinion was ever promulgated, and the question is therefore fairly open for reconsideration, and the full arguments with which we have been favored, together with a more careful consideration of the subject, have compelled me to regard that judgment as untenable and erroneous.

MANNING J.:

The only question in this case is, Whether the notice given by the county treasurer was sufficient. This question involves another, raised on the argument; viz., Whether any notice whatever by the county treasurer was necessary. If none was necessary, the one given would not vitiate the sale. The statute is in these words: "SEC. 74. The Auditor General shall annex to, and cause to be published with, each of said statements, a notice that so much of each tract or parcel of land described in said statement as will be necessary for that purpose, will be sold by the county treasurer on the first Monday of October next thereafter, *at such public and convenient place at the seat of justice*

*of the county as the county treasurer may select*, for the payment of the taxes, interest, and charges thereon." — *R. S.* 1846, *p.* 113.

The statute itself, in express terms, prescribes the notice to be given by the Auditor General. This being the case, I know of no principle of law by which he can be required to give any other notice. The Court can not require the notice to contain anything the statute itself does not require, without putting itself in the place of the Legislature, and doing what it might think the Legislature should have done to render the notice more complete. But this would be legislation, not construction; and all such considerations have nothing to do with the case. The inquiry is not what such notice should contain, for the statute says in express terms what it shall contain, and the notice given by the Auditor is in strict compliance with it. If the statute had required the lands to be sold at the county seat on the first Monday of October, by the county treasurer, and had then directed the Auditor General to give notice of the time and place of sale, I feel no hesitation in saying such notice should not only be for the first Monday of October, but should state the hour of the day, and name the particular place. I would so hold, on the principle the Legislature intended the notice should contain all such notices usually contain; that is, the particular place and hour of the day, without which most notices for the sale of property would be entirely worthless. But when the Legislature go further, and not only require notice to be given, but state what that notice shall be, as in the present statute, the Court is precluded from giving such a construction to the statute.

The only remaining question is, Whether the law requires notice to be given of the particular place of sale by the county treasurer, and, if so, what that notice must contain, and how it must be given. The words "at such public and convenient place at the seat of justice of the county as the county treasurer may select," clearly contemplate

notice by the treasurer of the place selected. I can not understand how a different construction can be given to the language, if the Legislature intended anything by it. It was not necessary to authorize the treasurer to sell at any place at the county seat he might think proper, for this he would be authorized to do by the Auditor's notice, if the words "at such place as he shall select" were stricken out of that notice. He would then be confined to no particular place, as one place as well as another, at the county seat, would be within the Auditor's notice. The selection then is not to be made for the convenience of the county treasurer, and it is difficult to see for whose benefit it is to be made, if not for those who wish to attend the sale; or how they would be benefited by it if no notice was to be given. To repel this idea of no notice, it is only necessary to refer to the city of Detroit, containing a population of sixty or seventy thousand inhabitants, the county seat of Wayne county. How would a stranger, who should come to Detroit to attend a sale, know where to go?

The obvious intention of the language, it seems to me, is that the county treasurer should select a place and give notice of it. Having arrived at this conclusion, the next question is, What must this notice contain, and how, and for what length of time, must it be given?

The first branch of the inquiry is answered by the statute itself. The notice must state the place selected at the county seat for the sale. It need contain nothing more to be a strict compliance with the law. It is not necessary it should state the hour — although it would be well to do so — because the statute does not require it; and what the statute does not, in express terms or by necessary implication, require, the Court can not require.

How must the notice be given, and for what length of time? The statute is silent on this subject, and the question must be settled by the common law. When a statute requires a notice to be given, but does not state how it shall

be given, or for what time, the common law comes to the aid of the statute, and does all in its power to help the statute out of the dilemma, and give it effect. The notice must be a reasonable notice, and such as the exigency of the case requires. It is resorted to from necessity, and may be so resorted to to give effect to a statute which would otherwise be a dead letter, or to subserve the ends of justice in some other way. The reasonableness of the notice depends on the object to be effected by it. In the case before us it was to inform such persons as came to the county seat to attend the tax sale, of the particular place of sale—to give them the means of informing themselves of the fact, after they had reached the county seat. The notice proved or admitted on the trial, in my opinion, was a reasonable notice, and would be in every county in our State, excepting Wayne and perhaps some two or three others. In Wayne, I think such notice should be published in the papers, and that posting would not be sufficient.

The judgment below should be reversed, and a new trial granted.

CAMPBELL J. *dissenting:*

The question arising for consideration in this case is, Whether the posting up of notices by the county treasurer of the place selected for tax sales, one week before the day of sale, is a compliance with the statute. The question arises under the Revised Statutes of 1846, as all previous statutes on the subject were repealed by that code. There is no difference of opinion concerning the necessity of such a notice as the statute requires, in order to make tax sales valid. The only difficulty arises in construing the statute.

Secs. 70 and 71, page 113, of the Revised Statutes, provide that the Auditor General shall publish full statements of lands delinquent, and of the taxes and charges on each parcel, for eight weeks successively previous to the first Monday of October in each year. Section 74 provides that

the Auditor General shall annex to, and publish with, each statement a notice that so much of each parcel as is neces-sary "will be sold by the county treasurer on the first Monday of October next thereafter, *at such public and convenient place at the seat of justice of the county as the county treasurer may select.*"

The Auditor's notice did not mention any place or time of day, but followed *verbatim* the language of the section. The treasurer, one week before the sale, posted up in three public places at Flint, a written notice that the sale would be made at the court house.

It is very evident from the statute that it was not in-tended that tax sales should not be made as public as pos-sible. Even where judicial sales are made, notice is required to be published for a considerable period, for the joint pro-tection of the debtor and creditor. On execution and probate sales, six weeks' notice is required, and on mortgage fore-closures twelve weeks. A publication for six weeks is required in all cases to bring in absent defendants, who are allowed from three to nine months to appear.

It has never been held that private property could be lawfully divested without some notice, actual or constructive, of the proceedings, by virtue of which it is so divested. Where judgments are given, the defendant is a party to a suit where he had an opportunity of contesting the claim against him. In all other cases, without constructive or ac-tual notice, no act is legal. The real estate of an infant can not be sold by his guardian, under a probate license, neither can the lands of an intestate be sold by the administrator, without a strict notice of the time and place of sale, pub-lished according to the statute. And a mortgagee, foreclos-ing under a power of sale, can not bar the equity of redemp-tion, if his notice in any degree falls short of the proper re-quirements. In none of these cases would a notice be valid which did not specify the time and place of sale, for the simple reason that without it they would not inform the

public, or those interested, of all that was needed to enable them to attend without further inquiry. A notice of sale, without time or place, or without either of them, would be no notice at all. It would leave an essential part of the transaction resting in the unexpressed will of a person who might change his mind as often as he pleased. It would create an incurable uncertainty. The maxim, *Id certum est quod certum reddi potest*, would not be complied with where the uncertainty rested in a variable form, subject to the mere will of a person. Our statute concerning mortgage foreclosures does not require, in terms, that either the day or place of sale shall be specified in the notice. The place is fixed by statute only where the lands are all in one county, and the time is left entirely indefinite. A notice given under the verbal requirements of the statute would allow a sale without any designation of time whatever. Yet no one would imagine for a moment that a sale under such a notice would be valid. The Act concerning foreclosures in chancery is entirely silent on the subject; and the other statutes, which are deficient in exactness, show very clearly that when a notice is provided for, the common understanding infers a notice which shall be available, and which gives information of every material fact.

The statutes passed from time to time on the subject of tax sales are a very satisfactory proof of this. Previous to the Revision of 1838, the sales were all made by the county treasurers, on their own motion. The statute fixed the day of sale and the place of sale, and yet the treasurer was required to give express notice both of time and place.—*L.* 1827, *p.* 377; *L.* 1833, *p.* 96. By the Revision of 1838, p. 96, Secs. 7 and 8, different sets of notices were to be given, and that which accompanied the printed list in the county, although required to be published in the regular issue, and not in a supplement, is not required to state that the sale is to be made at any *place*. By the Act of 1842, the time and place of sale were to be expressly designated.—*L.* 1842,

*p.* 97, §47. The law of 1843, which provided for the sale for delinquent taxes of those years, which had been suspended by change of laws, requires a notice that the lands will be sold on a certain day, without mention of place.— *L.* 1843, *pp.* 56, 59. The same law provided that if notices were not accurately published, the lands might be sold the next year under new notices. The general tax law of the same year (which continued in force until the Revision of 1846) provided for notice of the day of sale only.— *L.* 1843, *pp.* 78, 79. In 1844, the law was amended so as to require a list of the lands to be published with the notice; which had been omitted in 1843.— *L.* 1844, *p.* 161. In 1845, while these Acts were in force, the Auditor General was required to publish a list of lands bid in for the State at tax sales, with a notice that they would be sold at public sale, "*at the time and place designated* for ordinary tax sales, under the direction of the Auditor General." — *L.* 1845, *p.* 80, §6. And the next section provides that the county treasurer shall proceed to sell on any day designated in the notice, "*at the place designated*." — *p.* 81, §7. This Act shows a clear understanding of what the Act of 1843 meant, and that the notice required was that understood in ordinary cases. It is very true the Legislature can not authoritatively construe a law, but their view is, notwithstanding, of some value as a common sense interpretation, and for the future would be binding for other reasons. In 1846, the same thing is recognized, and the tax lands of the State are allowed to be sold with no additional expense beyond "*a general notice of the time and place of such sale*." It can hardly be contended, therefore, that the very vague language of the Act of 1843, in fact contemplated anything less than a notice of the place, as well as time, of sale. In none of these Acts is the sale required to be made at the court house, or even at the county seat. Without a place mentioned in the notice, the sale might have been anywhere in the county.

5 MICH.— 2G.

We now come to the Revised Statutes of 1846, under which the sales in this case were made. By section 72, p. 113, the Auditor General is required to designate the papers in which tax notices are to be published, on or before the first day of April in each year, and not afterwards, except in special cases mentioned. Statements of lands, with the taxes chargeable thereon, are required, by section 71, to be published eight weeks before the first Monday of October; and by section 74, a notice is to be published with these statements that the land "will be sold by the county treasurer on the first Monday of October next thereafter, at *such public and convenient place at the seat of justice of the county as the county treasurer may select.*" This law requires some particular place to be selected at the county seat, which shall be public and convenient. The treasurer must select it at some time; and it would hardly comport with good sense to say that the selection may rest in the unexpressed intention of the treasurer. There must be some method of ascertaining that selection. But the statute provides expressly for its *designation* as well as selection; and a designation must be formal and certain. By section 105, pp. 117, 118, the Auditor is required to give six weeks' notice that the sales of State tax lands will be made "at the *time and place designated* for the ordinary tax sales, under the direction of the Auditor General." This language is not satisfied unless a time and place are designated, either in this notice, or by some other notice already existing. By section 108, the matter is rendered more plain, for it uses the very language of the statute of 1845, which required the designation to be in the Auditor's notice.—"At the time *designated in the notice,* or immediately after the sale of other lands advertised to be sold for taxes at the same time, each county treasurer shall commence the sale *at the place designated.*"—p. 118, §108. By the laws of 1847, which amended the Revised Statutes before any sales had been advertised, it was provided that the Auditor General should

cause a notice that the lands bid in by the State would be sold by the treasurer, "*at the time and place designated for the ordinary tax sales*, under the direction of the Auditor General," to be published for *eight* weeks before the first. Monday of October. This required the same length of notice, therefore, for all sales, and the designation must therefore have been made by the treasurer before or at the time of the first notice. The various sections of the Revised Statutes constitute but a single statute, and all its parts must be construed together.

There is great reason for requiring that everything should be embraced in the same notice, because, otherwise, some might receive one part which others did not; and to leave the whole open to what might be deemed a reasonable notice, would render the titles entirely uncertain. No one could tell whether the sale was good or bad. There must be certainty and uniformity in such proceedings. There is no more reason for leaving open one notice than another. None of them are reasonable *for the information of non-residents, or the protection of infants*, while a short notice would avail as well as a long one to those already informed. The truth is, that the whole proceedings are, and must be, upon rules adopted arbitrarily, as the most proper for cases generally; and the Legislature has signified very clearly what notice shall be deemed reasonable. Comparing these Acts together, I can reconcile them to no notice which is not published for the time, and in the manner, pointed out by the various sections in express terms. The previous legislation will bear no other construction; and if there is any difference, this Act is more specific than the former ones.

And it seems to me, from the provisions concerning State tax lands, that the Auditor must have an intimation of the place selected, before he gives his notice, for otherwise he can not make out a complete notice. It is objected that the law does not provide how he shall be notified. It may be answered that neither does the law provide how the

treasurer shall be notified what paper has been selected. But the law may fairly be supposed to infer that the Auditor and treasurer may, in proper cases, correspond. The statute requires the Auditor to designate the papers before April, but does not say how or to whom the designation is to be made. The statute of 1844 required the county treasurer to designate the paper, and was equally silent as to the rest. Yet, in each instance, the Auditor and the treasurer are expected to find out the fact in some way. And if the paper is designated in April, there is no difficulty in the treasurer's giving notice, either to the Auditor or by publication, of the place designated, in time to have it embodied in the Auditor's notices. A notice which is not published as long and extensively as the others, can not fulfill the same mission; and there is no reason for one which is not applicable to the rest. The statute itself fixes the sale at the county seat, on the first Monday of October; and notice of this, and nothing more, conveys no new information. *The only things which the statute does not inform us of are, the place at the county seat, and the hour of the day.*

It may be claimed that the only object in leaving the selection to the treasurer, is to enable him, at the time of sale, to select the most commodious place; and that a fire might render it impossible to sell at a place previously pointed out. For many years we had statutes requiring a sale at the court house, and no exception was made for accidents. For more than thirty years the law had, in mortgage and execution cases, required either that the lands should be sold, or that notice should be affixed, at the court house, or place of holding the circuit court. Such is the law now; and yet there are no exceptions, and no practical difficulty has arisen. The risk that the place designated may be destroyed is no greater than that of the death of the treasurer or the burning of the printing - office. And if there is any choice of risks, it seems to me that the risk of uncertainty attaching to these sales is much more to be avoided

JULY TERM, 1858, at LANSING.

than those casualties than never have occurred within the State, and never may do so. It is very important that every one should know whether a tax notice has been proper, and not be left either to bring or defend an ejectment suit in order to find it out. There is no case known to the law where a weeks' notice, by posting written notices, has been allowed as sufficient to authorize the sale of real estate; and to hold such a notice good, would, I think, violate the whole spirit of the law and all its analogies, as well as infringe upon what I conceive to be its literal interpretation.

I think the judgment below should be affirmed.

*Judgment reversed, and new trial granted.*